# UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| Lori Anne Smith, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>Michael J. Astrue, Commissioner of the )<br>Social Security Administration, )<br>)<br>Defendant. )<br>)<br>_____ ) | Civil Action No. 9:11-376-RMG<br><br>**ORDER** |

Plaintiff filed this action seeking judicial review of the final decision of the Commissioner of the Social Security Administration denying her disability insurance benefits ("DIB"). In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02, D.S.C., this matter was referred to the Magistrate Judge for pre-trial handling. The Magistrate Judge issued a Report and Recommendation on May 15, 2012 recommending that the decision of the Commissioner be reversed and remanded. (Dkt. No. 23). The Commissioner timely objected to the Report and Recommendation of the Magistrate Judge (Dkt. No. 25), and Plaintiff filed a reply (Dkt. No. 26). As further set forth below, the Court reverses the decision of the Commissioner and remands the matter for further action consistent with this opinion.

## Standard of Review

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with this

Court. *Mathews v. Weber*, 423 U.S. 261 (1976). The Court is charged with making a *de novo* determination of those portions of the Report and Recommendation to which specific objection is made. The Court may accept, reject or modify, in whole or in part, the recommendation of the Magistrate Judge. 28 U.S.C. § 636(b)(1).

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. Section 205(g) of the Act provides that "[t]he findings of the [Secretary] as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). This standard precludes a *de novo* review of the factual circumstances that substitutes the Court's findings for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971).

However, "[t]he statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). "[T]he courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner's] findings, and that his conclusion is rational." *Vitek*, 438 F.2d at 1157-58. Moreover, the findings of the Commissioner are not binding if they were based upon the application of an improper legal standard. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

**Factual Background**

Plaintiff filed her application for DIB on February 5, 2009, alleging that she had been disabled since October 6, 2004 following injuries suffered in a motor vehicle accident. For purposes of establishing DIB eligibility, the claimant must demonstrate that he or she became

disabled prior to the expiration of the claimant's insured status. 42 U.S.C. §423(c); 20 C.F.R. § 404.101. For Plaintiff, this required a showing that she was disabled on or before March 31, 2008. It is well settled, however, that medical evidence produced after the expiration of the claimant's insured status may be relevant to prove previous disability. *Wooldridge v. Bowen*, 816 F.2d 157, 160 (4th Cir. 1987).

It is unchallenged by the Commissioner that Plaintiff was actively working as a drywall installer in her own business earning a good income at the time of her motor vehicle accident on October 6, 2004 and never returned to work from the time of the accident until the expiration of her insured status on March 31, 2008. Record [hereafter referred to as "R"] at 12. Plaintiff complained at the scene of the accident of radiating neck and back pain and was initially treated conservatively. R. at 174, 194-195, 202-213, 286-287. Although Plaintiff's strength and range of motion remained generally normal, she complained repeatedly of pain and discomfort. R. at 194-195, 286-290. An MRI performed on November 8, 2004 demonstated abnormalities in the cervical spine, including some minimal disc protrusion at C4-5 and disc osteophyte complex at C5-6 producing mild cord effacement and mild to moderate central cord stenosis. R. at 198-199. After efforts utilizing conservative treatment failed to provide Plaintiff relief from her pain, she underwent major spine surgery on May 24, 2005 with a neurosurgeon, Dr. Stephen Rawe, to address disc herniation and instability in her cervical spine. R. at 298-300. This surgery involved an interbody fusion and anterior spinal plating. *Id.*

Plaintiff voiced complaints of continued pain with Dr. Rawe within a week of her surgery and continued over many months to complain of pain variously in her neck, shoulders and arm. While she expressed from time to time some abatement in her symptoms, there was never a

period in which she indicated she was pain free. R. at 226-238, 290-293. Dr. Rawe concluded in a note of January 31, 2006 that he did not see further surgical options for Plaintiff, rated her 15% disabled to the whole body and indicated he thought she would be able to return to work. R. at 293.

Plaintiff was thereafter seen by a pain management specialist, Dr. Nancy Lembo, who documented the claimant's persistent complaints of neck and back pain. R. at 261-266. Dr. Lembo noted in the patient's March 21, 2007 office record that a February 7, 2006 MRI revealed "questionable central and foraminal narrowing" at C5-6 and diffuse disc bulging at C6-7. R. at 263. Plaintiff was evaluated by a rehabilitation specialist, Ms. Kathy Willard, on April 27, 2006, who found the claimant's severe pain hampered her daily personal activity and that rehabilitation efforts would not be effective until "there is a significant reduction in Ms. Smith's pain." R. at 239. Plaintiff was also seen by her primary care physician for chronic pain medications and those records are replete with the patient's complaints of persistent and severe pain. R. at 268-277. In an office visit on February 13, 2008, six weeks before the expiration of Plaintiff's insured status, Dr. Lembo noted Plaintiff's persistent neck pain and worsening symptoms in her shoulders and arms. R. at 261.

Plaintiff continued to see Dr. Lembo in 2009 and was documented with problems of neck pain and numbness. R. at 336-337, 349, 351, 353. Dr. Lembo diagnosed Plaintiff with myofascial pain and failed neck syndrome. *Id.* After a round of steroid injections provided her only temporary relief, Plaintiff returned to Dr. Rawe to be reevaluated. R. at 346-347, 349, 351, 353, 367. Dr. Rawe elected to take Plaintiff back to the operating room on November 11, 2009 for another major cervical spine surgery. Dr. Rawe documented at surgery significant

abnormalities in Plaintiff's cervical spine at C4-5 and C5-6, including the presence of disc herniation, instability and adjacent segment disease. R. at 375-377. Plaintiff experienced some initial improvement in symptoms following this surgery but by the Spring of 2010 she was again complaining of radiating neck and shoulder pain. In the last note in the record, dated May 18, 2010, Plaintiff is documented to have "worsening" pain which "began years ago." R. at 428.

Plaintiff's application for disability insurance benefits was initially denied by the Social Security Administration and she timely appealed that adverse decision to an administrative law judge ("ALJ"). The ALJ conducted a hearing on July 8, 2010 and issued an order on August 11, 2010 finding that Plaintiff was not disabled under the Social Security Act. The ALJ found that while Plaintiff had various severe impairments, including cervical fusion, cervical corpectomy and myofascial pain, she retained the residual functional capacity to perform light work. R. at 12, 14. The ALJ further found that Plaintiff was limited to occasionally crawling and reaching and could perform only simple, routine and repetitive tasks. R. at 14.

In reaching his conclusion that Plaintiff was capable of performing light work, the ALJ expressly discounted the findings of Dr. Lembo, Plaintiff's longstanding pain medicine physician. The ALJ found that Dr. Lembo's diagnoses of failed back and neck syndrome were not supported by clinical abnormalities or physical examination and were inconsistent with an earlier finding of marked improvement in range of motion following a steroid injection. R. at 14. The ALJ acknowledged that Plaintiff did undergo an anterior interbody fusion in November 2009 but noted "this surgery was performed after the claimant's date last insured of March 2008." *Id.* The Appeals Council denied Plaintiff's request for review and the ALJ's decision became the decision of the Commissioner. It is from this decision Plaintiff now seeks judicial review.

## Discussion

### A. Failure to give the opinions of a treating physician, Dr. Lembo, proper consideration under controlling Social Security Regulations.

Generally speaking, the Social Security Administration accords greater weight to the opinions of treating physicians, which is based upon the premise that treating sources are "most able to provide a detailed, longitudinal picture" of the claimant's medical impairments and "may bring a unique perspective to the medical evidence . . . ." 20 C.F.R. § 404.1527(c)(2). Where a treating physician's opinions are "well supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence in [the] record . . .", the Commissioner is obligated to give those opinions controlling weight. *Id.* To the extent the opinions of the treating physician are not given controlling weight, the treating physician's opinions will still be evaluated by a variety of factors, including whether the physician has examined the patient, the nature, length and extent of the treating relationship, the supportability of the opinions with other evidence in the record and whether the treating physician is a specialist. 20 C.F.R. § 404.1527(c). Further, it is well settled that medical evaluations and opinions made subsequent to the date of the claimant's last insured status may be considered as evidence to establish the existence of the claimant's disability during the period of his or her insured status. *Wooldridge*, 816 F.2d at 160.

The Commissioner's evaluation of Dr. Lembo's opinions fall far short of these well settled legal standards. First, once the Commissioner concluded that Dr. Lembo's opinions would not be given controlling weight, there was no articulated evaluation of her opinion in light of Dr. Lembo's extensive personal treatment and monitoring of Plaintiff and her special expertise

as a board certified pain medicine specialist. Second, the rather casual dismissal of the Plaintiff's major 2009 cervical spine surgery without assessing its potential relevance in establishing the extent of Plaintiff's longstanding spine symptoms is inconsistent with *Wooldridge* and is particularly troubling here because the findings at surgery essentially confirm the accuracy of Dr. Lembo's challenged diagnoses. In light of these deficiencies, it is necessary that the Commissioner's decision be reversed and remanded to evaluate fully the opinions of Dr. Lembo as a treating specialist physician and to determine whether they support a finding of disability during the insured status period.

**B. Failure to obtain the opinion of a vocational expert to establish that the national economy offers employment opportunities to the claimant.**

In the course of concluding that Plaintiff was capable of performing light work, the ALJ found that she had certain non-exertional limitations – crawling, reaching and the ability only to perform simple, routine and repetitive tasks. R. at 14. Despite these documented non-exertional limitations, the ALJ utilized the Medical-Vocational Guidelines ("the Grids") to establish the availability of employment opportunities for Plaintiff in the national economy. As the Magistrate Judge ably addressed in the Report and Recommendation, it is inappropriate for the Commissioner to rely on the Grids where the claimant has severe non-exertional limitations or cannot perform the full range of work activity within a Grid category. *Walker v. Bowen*, 889 F.2d 47, 49 (4th Cir. 1989). While it is true that if the non-exertional limitations do not significantly erode the occupational base the Commissioner may still utilize the Grids, it is quite clear that in the decision under challenge the ALJ failed to adequately and fully address the non-exertional limitations. Indeed, the limitation to simple, routine and repetitive tasks is not even

addressed by the ALJ.

After reviewing the full record before the Court, the Report and Recommendation, the objections of the Commissioner and the applicable law, the Court adopts that portion of the Report and Recommendation finding that the Commissioner's use of the Grids under these circumstances constitutes reversible error. (Dkt. No. 23 at 4-9). This constitutes a second and independent ground for reversal of the decision of the Commissioner and remand.

## Conclusion

Based on the foregoing, the decision of the Commissioner is **REVERSED** pursuant to Sentence Four of 42 U.S.C. § 405(g) and **REMANDED** for further consideration not inconsistent with this Order.

AND IT IS SO ORDERED.

Richard Mark Gergel
United States District Judge

June 22, 2012
Charleston, South Carolina